**FILED**
NOV 15 2010
DAVID CREWS, CLERK
BY_____
 Deputy

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JUAN FRANCISCO SANDOVAL DIAZ,                                    PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:10CV114-MA

RYAN ALEXANDER d/b/a RYAN ALEXANDER FARMS and
ALEXANDER FARMS, LLC,                                           DEFENDANTS

### PLAINTIFF'S ORIGINAL COMPLAINT

PRELIMINARY STATEMENT

1.      This is an action brought by a Mexican farmworker who was employed by Defendants pursuant to the federal H-2A guestworker visa program in 2008 and 2009. In November 2009, while Plaintiff was on the job in Defendants' sweet potato fields, Plaintiff was subjected to a brutal physical attack orchestrated by one of Defendants' supervisory employees. Furthermore, contrary to Defendants' assurances to the U.S. Department of Labor, they did not provide worker's compensation insurance covering Plaintiff's employment as required by the federal regulations governing the H-2A program. Plaintiff seeks monetary relief under Mississippi law for the physical and emotional harm he suffered as a result of that attack.

JURISDICTION

2.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and Plaintiff alleges damages in excess of $75,000.

VENUE

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## PARTIES

4. Plaintiff is a citizen and national of Mexico who was lawfully admitted to the United States in 2008 and 2009 on temporary work visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

5. Defendant Ryan Alexander is an individual residing in Calhoun County, Mississippi. On information and belief, Defendant Ryan Alexander does business as "Ryan Alexander Farms," a sole proprietorship with its principal place of business in Calhoun County, Mississippi.

6. Defendant Alexander Farms, LLC is a limited liability company organized under the laws of Mississippi.

## FACTS

7. In 2008 and 2009, Defendants utilized the federal guestworker program and obtained H-2A visas from the U.S. government for Plaintiff and numerous other Mexican workers to work on Defendants' sweet potato farm in Vardaman, Mississippi.

8. At all times relevant to this action, Defendants employed a supervisor and recruiter whose name is Felix Herrera to recruit workers in Mexico to travel to Mississippi to work in Defendants' sweet potato fields pursuant to H-2A visas.

9. At all times relevant to this action Defendants also employed Felix Herrera to supervise crews of Defendants' H-2A workers in Defendants' sweet potato fields and to transport the H-2A workers to and from work at Defendants' farm.

10. In 2008 and 2009, Plaintiff was recruited in Mexico by Defendants' agents, including Felix Herrera, to work on Defendants' sweet potato farm pursuant to H-2A visas.

11. In 2008 and 2009, Felix Herrera supervised Plaintiff while Plaintiff worked for Defendants in Defendants' sweet potato fields pursuant to the terms of his H-2A visas.

12. Defendants delegated to Felix Herrera the authority to supervise some of Defendants' H-2A workers, including Plaintiff, on a daily basis.

13. Among other things, this delegation of supervisory authority from Defendants to Felix Herrera included authorizing him to decide which workers would be placed on the list of workers for whom Defendants would seek H-2A visas, grant or deny H-2A workers' requests for break time, give instructions to H-2A workers regarding how to accomplish work tasks, and discipline or correct workers' job performance.

14. Defendants also delegated authority to Felix Herrera to transport Defendants' H-2A employees, including Plaintiff, between Defendants' H-2A worker housing and Defendants' fields and from Defendants' H-2A worker housing and into town as needed to purchase groceries and attend to other personal matters.

15. Defendants also employed a supervisory employee named Juan Salinas who functioned as the second-in-command at Defendants' farm.

16. As the primary supervisor of Defendants' H-2A workers, Juan Salinas visited the fields on a daily basis, decided when work would start and stop, kept track of the workers' hours and/or piece rates, participated in the distribution of payment to workers, and generally oversaw the work performed by the workers and ensured that everything was being done correctly.

17. On information and belief, the supervisor known to Plaintiff only as "Juan" is Defendants' supervisor Juan Salinas.

18. In 2008 and 2009, Felix Herrera maintained a violent and threatening atmosphere

in Defendants' sweet potato fields.

19. On multiple occasions throughout Plaintiff's employment with Defendants, there were incidents of physical violence amongst Defendants' H-2A employees while they labored in Defendants' sweet potatoes fields under the supervision of Felix Herrera and/or other supervisory employees of Defendants, including "Juan."

20. Defendants' supervisors Felix Herrera, Jenaro Mata, and Juan Salinas maintained an atmosphere at work where physical injury was both condoned and foreseeable. For example, these supervisors were regularly present in the field supervising workers as they threw sweet potatoes at each other and at workers in other crews. Moreover, these supervisors also regularly instructed workers in their own crews to throw sweet potatoes at specific individuals.

21. On one occasion during Plaintiff's employment with Defendants, a group of workers supervised by Felix Herrera jumped on and attacked another H-2A worker.

22. Plaintiff perceived this attack as an effort by Herrera to assert his authority over this particular worker and the other H-2A workers whom he supervised.

23. In 2008 and 2009, Felix Herrera demanded money from the H-2A workers he had recruited to work for Defendants in exchange for including them on the list of workers for whom Defendants sought H-2A visas and who came to work for Defendants.

24. In 2009, Felix Herrera demanded hundreds of dollars from Plaintiff, telling Plaintiff that he owed Herrera money in exchange for Herrera's recruitment of Plaintiff to work for Defendants pursuant to an H-2A visa.

25. When Plaintiff opposed Herrera's demands for money and told him that he would not pay Herrera anything in exchange for his recruitment, Herrera responded by insisting that

Plaintiff pay him and indicated that Plaintiff would not be able to return to work for Defendants in the future.

26. Plaintiff continued to oppose Herrera's demands for money in exchange for his recruitment and told Herrera that he would not pay Herrera any money.

27. On at least one occasion, Herrera made verbal threats to Plaintiff that Plaintiff interpreted as a threat of physical violence.

28. On or about November 12, 2009, as Plaintiff walked into Defendants' sweet potato fields following a meal break, Plaintiff was attacked by Felix Herrera and a group of Defendants' H-2A workers who were supervised by Felix Herrera.

29. On information and belief, Felix Herrera instructed H-2A workers in his crew to attack Plaintiff.

30. The workers knocked Plaintiff to the ground and kicked him forcefully on his legs and back.

31. After the attack, the workers who had attacked Plaintiff resumed working in the fields.

32. On information and belief, Defendants and their supervisory employees did not discipline any of the workers who attacked Plaintiff or the other worker who had been previously attacked.

33. Supervisory employee "Juan" witnessed the attack on Plaintiff and told him to continue working after it was over.

34. Plaintiff suffered severe injury to his ankle as a result of the attack and told "Juan" and other supervisory employees of Defendants that he believed it was broken and that he needed

help.

35. "Juan" told Plaintiff that now that his ankle was injured, he would have to be sent back to Mexico because surgery would be too expensive.

36. One of Defendants' managerial employees, whose name on information and belief is Kenneth Alexander, became aware of Plaintiff's injuries and ordered that another supervisory employee named Jenaro Mata take Plaintiff to see a doctor.

37. Jenaro Mata took Plaintiff to a clinic in Houston, Mississippi where doctors determined that he had a broken ankle.

38. On or about November 19, 2009, doctors at Baptist Memorial Hospital in Oxford, Mississippi performed surgery on Plaintiff's ankle.

39. Following the attack that left him with a severe ankle injury, and until early December 2009, Plaintiff remained in Defendants' H-2A worker housing.

40. Plaintiff was unable to work after the attack because of his ankle injury and did not receive any compensation for lost wages.

41. On several occasions in November 2009, Defendants' supervisory employees Jenaro Mata, Felix Herrera, and "Juan" warned Plaintiff not to tell anyone about the attack. Some or all of these supervisors told Plaintiff that if he told anyone what had happened, Plaintiff would be responsible for all medicals bills associated with his injury and would go to jail if he did not pay them.

42. Supervisory employee Felix Herrera was acting within his role as a supervisor and recruiter for Defendants when he demanded payment of recruitment fees from Plaintiff and later ordered and participated in the attack on Plaintiff that caused Plaintiff's injury.

43. The attack on Plaintiff in November of 2009 was committed by Felix Herrera and other employees of Defendants willfully and maliciously.

44. Felix Herrera and the other employees intended to injure Plaintiff when they attacked him in November of 2009.

45. On information and belief, Defendants' general liability insurance policy with Farm Bureau Insurance covered the costs of some or all of Plaintiff's medical treatment and surgery in November and early December 2009.

46. In early December 2009, Defendants sent Plaintiff and the other H-2A workers back to Mexico.

47. The terms of work offered by Defendants to Plaintiff in the 2009 season to induce him to work for Defendants included, *inter alia*, (a) the terms offered in the "clearance orders," ETA Forms 9142 and 790, submitted by Defendants to the U.S. Department of Labor to obtain permission to import foreign workers; (b) the terms of work set forth in the federal regulations then governing Plaintiff's visa, 20 C.F.R. § 655.104; and (c) the federal requirement that Defendants comply with all applicable federal, state, and local laws, 20 C.F.R. § 655.105(e)(1).

48. Specifically, Defendants had the following obligations under federal statutory and regulatory law with respect to their employment of Plaintiff in 2009:

   i. To provide, at no cost to the worker, insurance under the State workers' compensation law or under a policy that provides benefits at least equal to those provided under the State workers' compensation law, as required by 20 C.F.R. § 655.104(e);

   ii. Not to seek or receive, and to have their agents not seek or receive, payment of any kind from their employees for any activity related to obtaining labor certification, including payment of recruitment costs, 20 C.F.R. § 655.105(o);

    iii.    To contractually forbid any foreign labor contractor or recruiter it engaged in international recruitment of H-2A workers to seek or receive payments from prospective employees, including payment of recruitment costs, 20 C.F.R. § 655.105(p); and

    iv.    To refrain from intimidating, threatening, restraining, coercing, or in any manner discriminating against any person who with just cause asserts or exercises rights or protections afforded under the statutory and regulatory rules governing the H-2A program, 20 C.F.R. § 655.105(k).

49. These obligations were incorporated into Defendants' employment contract with Plaintiff in 2009, a copy of which Defendants made available to Plaintiff as required by law and upon which Plaintiff reasonably relied in working for Defendants.

50. During the course of Plaintiff's employment in 2009, Defendants:

    i.    Knowingly failed to provide insurance to Plaintiff under a State workers' compensation law or a policy that otherwise meets the requirements of 20 C.F.R. § 655.104(e);

    ii.    Allowed Defendants' agent and recruiter Felix Herrera to seek payment from Plaintiff in exchange for his recruitment of Plaintiff to work for Defendants pursuant to an H-2A visa; and

    iii.    Intimidated, threatened, and discriminated against Plaintiff because he asserted or exercised rights or protections afforded under the statutory and regulatory rules governing the H-2A program.

51. Defendants knew or should have known that their supervisory employees Felix Herrera, "Juan," and Jenaro Mata were physically threatening and abusive to the H-2A employees they supervised, including Plaintiff.

52. Defendants knew or should have known that their supervisory employee and recruiter Felix Herrera demanded payment from the H-2A workers he recruited, including Plaintiff.

53. Plaintiff has required and requires ongoing medical treatment for his ankle as a

result of the November 2009 attack by Defendants' supervisory employees.

54. Plaintiff has been unable to work and/or suffered from a diminished work capacity as a result of the November 2009 attack by Defendants' supervisory employees.

55. Plaintiff has already incurred medical expenses at his own cost as a result of the November 2009 attach by Defendants' supervisory employees.

56. Plaintiff has experienced pain and suffering as a result of the November 2009 attack by Defendants' supervisory employees.

57. Plaintiff has experienced mental anguish and distress as a result of the November 2009 attack by Defendants' supervisory employees.

58. Plaintiff experienced additional mental anguish and distress as a result of the threats made to him by Defendants' supervisory employees following their attack on him on November 12, 2009.

59. Defendants' actions complained of herein constitute intentional wrongs and were undertaken with malice, gross negligence, or reckless disregard for the rights of others warranting the imposition of punitive damages and an award of attorney's fees.

60. All conditions precedent to this action have been satisfied.

61. All actions and omissions alleged herein were undertaken by Defendants either directly and/or through their agents.

## FIRST CAUSE OF ACTION: ASSAULT

62. The facts described in Paragraphs 7–61 above constitute an assault under Mississippi law for which Plaintiff seeks relief under Mississippi law, including but not limited to compensatory and punitive damages and reasonable attorney's fees.

63. Defendants are vicariously liable for the assault described in Paragraphs 7–61 based on the actions of their agents and supervisory employees Felix Herrera and "Juan."

## SECOND CAUSE OF ACTION: NEGLIGENCE

64. Defendants owed a duty to their H-2A employees, including Plaintiff, to ensure that their supervisory employees did not wield their supervisory authority in such a way as to abuse, attack, extort, or threaten nonsupervisory employees in the workplace.

65. Defendants breached their duty to Plaintiff by failing to adequately screen, train, and supervise Felix Herrera and other employees responsible for supervising Plaintiff.

66. Defendants knew, or should have known, that their supervisory employees and recruiters subjected H-2A employees, including Plaintiff, to the extortionate and physically abusive practices described above.

67. The actions and inactions of Defendants in failing to adequately screen, train, and supervise their supervisory employees caused Plaintiff physical, emotional, and monetary harm for which he seeks relief under Mississippi law.

## THIRD CAUSE OF ACTION: BREACH OF CONTRACT

68. The actions described in Paragraphs 7–61 constitute a breach by Defendants of their 2009 employment contract with Plaintiff.

69. Plaintiff suffered physical, emotional, and monetary harm as a result of Defendants' breach of the 2009 employment contract with Plaintiff.

70. Plaintiff seeks all appropriate relief, including compensatory damages, punitive damages, and attorney's fees, under Mississippi law for damages he suffered as a result of Defendants' breach of his employment contract.

FOURTH CAUSE OF ACTION: FRAUD

71. The facts described in Paragraphs 7–61 above constitute fraud under Mississippi law, on account of which Plaintiff seeks compensatory and punitive damages and reasonable attorney's fees to compensate him for the harm that he has suffered.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that, upon trial of this action, this Court enter an order:

(a) Granting judgment in favor of Plaintiff and against Defendants for compensatory and punitive damages for Defendants' assault, negligence, and contractual breach;

(b) Awarding Plaintiff pre and post-judgment interest;

(c) Awarding reasonable attorney's fees to Plaintiff;

(d) Awarding costs to Plaintiff; and

(e) Granting such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

W. Brent McBride
Co-Counsel for Plaintiff
Mississippi Bar No.101442
McBride Law Firm, PLLC
P.O. Box 84
211 N. Madison St.
Tupelo, MS 38804
Telephone: (662) 690-9288
Facsimile: (662) 690-9290
Email: mcbridelawfirm@bellsouth.net or
brent@brentmcbride.com


Melody Fowler-Green
*Pro Hac Vice Motion Filed*

Lead Counsel for Plaintiff
Tennessee Bar No. 023266
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd. Ste. 135
Nashville, Tennessee 37217
Telephone: (615) 750-1200
Facsimile: (615) 366-3349
Email: mfgreen@trla.org

ATTORNEYS FOR PLAINTIFF